UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEPHEN T. GREENE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19-cv-00687-JD |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Stephen T. Greene applied for social security disability insurance benefits, alleging that he is unable to work due to psychosis, schizophrenic tendencies, anxiety, paranoia, delusions, and hallucinations. Mr. Greene was denied benefits after a hearing before an Administrative Law Judge ("ALJ") in September 2018. Mr. Greene filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the ALJ's determination regarding his residual functional capacity ("RFC"). The Commissioner filed a response in opposition. As explained below, the Court remands the Commissioner's decision for further proceedings.

**I.      Factual Background**

Mr. Greene applied for benefits on November 20, 2016, alleging an onset date of October 6, 2016. (R. 85-86). Mr. Greene stopped working full-time in July 2016. (R. 45-46, 209). He claimed he became unable to work due to psychosis, schizophrenic tendencies, anxiety, paranoia, delusion, hallucinations, and other unknown reasons. (R. 85-86). In 2016, the examination report from Bowne Center showed that Mr. Greene has suffered from acute distress, psychosis, anxiety, sleep disturbance, and EPS (R. 378, 442-43). He was detained for 72 hours due to paranoia, anger

1

issues, and destruction of property. (R. 442-43). In January 2017, a medical report from Oaklawn Psychiatric Center diagnosed Mr. Greene with schizophrenia with severe hallucinations and moderate delusions. (R. 367). Non-examining State Agency psychological consultant Dr. Lovko found that Mr. Greene had severe Schizophrenia Spectrum and Other Psychotic Disorders. (R. 88.) Dr. Lovko opined that Mr. Greene has moderately limited ability to understand, remember, and carry out detailed instructions, and he has moderately limited ability to maintain attention and concentration for extended periods. *Id.* With respect to social interaction, Dr. Lovko determined that Mr. Greene has moderately limited ability to interact appropriately with the general public. (R. 91). His ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness is also moderately limited. *Id.* In her narrative functional capacity assessment, Dr. Lovko concluded that Mr. Greene "appears to be able to tolerate superficial, casual interactions with others" and that Mr. Greene "can relate on superficial basis on an ongoing basis with co-workers and supervisors." (R. 91). Similarly, another State Agency consultant, Dr. Johnson, made substantially similar findings: "[Mr. Greene] appears to be able to tolerate superficial, casual interactions with others" and "is restricted to work that involves brief, superficial interactions [with] fellow workers, supervisors and the public. (R. 104-05).

The ALJ conducted a hearing on July 19, 2018. During the hearing, Mr. Greene testified he was diagnosed with schizophrenia psychosis. (R. 48). He cannot pay attention very long. *Id.* He was paranoid and sometimes had dark thoughts. *Id.* He had low energy. (R. 49). He destroyed his room completely because he thought people were scratching his stuff. *Id.* He thought someone, even his mother, was trying to kill him. (R. 50-51). He carried weapons to protect himself. (R. 51). He cannot get along with his mother and has a lot of arguments with her. (R. 52-53). He further testified that he thought his friend, Donovan, was going to kill him and his nephew. (R. 53). When

he hung out with his fiancée, he carried tools to make him feel confident. (R. 56). When he got frustrated, he had suicidal thoughts. *Id.* Mr. Greene testified that in 2018 he worked at Taco Bell/KFC for five days and quit because he had too much stress and paranoia. (R. 44). He was afraid that someone would come in from the backdoor with a gun and shoot him. (R. 44-45). Mr. Greene's mother testified that when he got angry, he went outside and beat the trash barrel with his hatchet. (R. 76).

The ALJ found Mr. Greene had the following severe impairments: schizophrenia, history of attention deficit hyperactivity disorder, anxiety, and substance-induced psychotic disorder, and history of chronic cannabis usage. (R. 18). The ALJ found these impairments significantly limit Mr. Greene's ability to perform basic work activities as required by SSR 85-28. *Id.* The ALJ issued an unfavorable decision and made the following finding as to RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Mentally the claimant is limited to understanding, carrying out and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight hour workday without frequent redirection to task; cannot perform tasks requiring intense focused attention for more than two hours continuously, but can maintain attention concentration for two hour segments of time; work that does not require satisfaction of strict or rigid production quotas or does not involve assembly-line pace; *only occasional interactions with others including supervisors, coworkers and the general public; and no concentrated exposure to intense or critical supervision.*

(R. 22) (emphasis added). Finding that there are jobs that exist in significant numbers in the national economy that Mr. Greene can perform, such as hand packer, laundry worker, and checker, the ALJ found Mr. Greene not disabled. (R.33, 81). The Appeals Council declined Mr. Greene's request for review, and Mr. Greene filed this action seeking judicial review of the Commissioner's decision. (R. 1).

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.     Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and

whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### IV.   Discussion

Mr. Greene offers two arguments in support of reversal. First, he argues that the ALJ's RFC assessment is not supported by substantial evidence. Second, he argues that the ALJ's analysis of his subjective symptoms was legally insufficient. The Court agrees with the first argument and declines to address the second argument.

#### a.   RFC assessment

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). An ALJ must determine a claimant's RFC by considering all relevant evidence in the case record, including severe and non-severe impairments, medical and non-medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *See* 20 C.F.R. §§ 404.1529, 404.1545. In this case, the ALJ's RFC assessment provides for "only *occasional* interactions with others including supervisor, coworkers and the general public," whereas Dr. Johnson and Dr. Lovko opined that Mr. Greene "appears to be able to tolerate *superficial*, casual interactions with others" (R. 22, 91, 105) (emphasis added). Based on this, Mr. Greene challenges the ALJ's finding, arguing that the ALJ failed to acknowledge the distinction between "occasional" interactions and "superficial" interactions, and that the ALJ did not explain how he reached his decision of "occasional" interactions.

Social Security Ruling 83–10 defines "occasionally" as "occurring from very little up to

one-third of the time." 1983 WL 31251, at *5 (S.S.A.1983). Logically, "occasional" goes to the frequency of interaction. *See id.* As to "superficial," there is no such definition within Social Security Ruling 83-10. However, "superficial" interactions describe the degree and the extent of interaction, because "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Sanders v. Astrue*, 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012). The Court agrees that "superficial" aptly describes the quality of interaction. *See Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (concluding that "[o]ccasional contact" goes to the quantity of time spent with the individuals, whereas "superficial contact" goes to the quality of the interactions.); *Sanders*, 2012 WL 1657922, at *12 (distinguishing "occasional" interaction and "superficial" interaction because even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions); *Eveland v. Berryhill*, 2017 WL 3600387, at *4 (N.D. Ind. Aug. 22, 2017) (finding that the ALJ erred when the ALJ limited the plaintiff to "occasional" contact with coworkers and supervisors when the expert opined that the plaintiff could engage in "superficial" contact on an "ongoing basis").

In this case, State Agency consultants opined that Mr. Greene has social action limitations. (R. 31, 90). They referred to the quality of the interactions, namely handling instruction and criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. (R. 91, 104). However, the ALJ did not include these moderate limitations in the RFC assessment and did not explain why he omitted the State Agency consultants' limitations, while assigning great weight to their opinions. Nor did the ALJ pinpoint a piece of evidence which contradicted the State Agency's limitations. More importantly, the ALJ

failed to explain satisfactorily the basis for his RFC assessment to limit Mr. Greene to "occasional" interactions, which makes it difficult for the reviewing court to trace the path of his reasoning. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Therefore, the ALJ failed to build a logical bridge between the evidence and Mr. Greene's RFC. Accordingly, remand is required.

*Everland* and *Wartak* bear factual and legal similarities to the present case. In *Everland*, the ALJ limited Plaintiff to "occasional interactions" with coworkers and supervisors, whereas a State Agency psychologist, whose opinions the ALJ gave "considerable weight," opined that Plaintiff "can relate on at least a *superficial basis* on an ongoing basis with co-workers and supervisors." 2017 WL 3600387, at *5 (emphasis in original). The Court reversed the ALJ's decision, requiring the ALJ on remand to incorporate State Agency psychologist's limitation to "superficial interaction" or explain why he rejects the limitation in favor of "occasional interaction." *Id.*

Likewise, in *Wartak*, State Agency reviewing physician Dr. Lovko in her narrative functional capacity assessment opined that Plaintiff "can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors." 2016 WL 880945, at *5. However, the ALJ's RFC provided for "only occasional co-worker contact and supervision." *Id.* at 6. The Court found that the ALJ provided no analysis of how the limitation to "occasional" contact with coworkers and supervisors accommodates Dr. Lovko's limitation to "superficial contact." *Id.* at 7. The Court reversed the ALJ's decision because the ALJ did not build a logical bridge between the evidence and the RFC. *Id.*

Because the ALJ in this case made no attempt to explain the basis for his decision to limit Mr. Greene to "occasional interaction" rather than "superficial interaction," the ALJ failed to build an accurate logical bridge between the evidence and the RFC. This failure warrants remand.

### b. *Subjective allegations*

Mr. Greene's second argument is that the ALJ's analysis of his subjective symptoms was legally insufficient. Mr. Greene argues that once the ALJ found that Mr. Greene had conditions which could cause the symptoms he alleged, the ALJ was required to analyze those symptoms. Because the Court has already determined that the case must be remanded for a new RFC determination, the Court need not address this alternative argument. *See Thomas v. Berryhill*, 2017 WL 3521413, at *3 n.2 (N.D. Ill. Aug. 15, 2017) ("Having determined that the case must be remanded for a new RFC determination, the Court need not address plaintiff's alternative argument that the RFC is flawed because it does not properly account for his deficits in concentration."); *see also Underwood v. Commissioner*, 2018 WL 1547102, at *5 (C.D. Ill. Mar. 29, 2018). The parties and the ALJ are free to address this issue on remand.

## V.     Conclusion

Based on the foregoing, the Court REVERSES the Commissioner's decision and REMANDS this matter for further proceedings. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  August 11, 2020

    /s/ JON E. DEGUILIO
Chief Judge
United States District Court